# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 17, 2012 Session

## NATHAN CORDELL BURKEEN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Maury County**
No. 16485   Robert L. Holloway, Judge

**No. M2010-02302-CCA-R3-PC - Filed June 21, 2012**

The petitioner, Nathan Cordell Burkeen, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of trial counsel, which rendered his guilty plea unknowing and involuntary. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Matthew H. Dunkin, Lawrenceburg, Tennessee, for the appellant, Nathan Cordell Burkeen.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Mike Bottoms, District Attorney General; and Dan Runde, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On August 23, 2006, the petitioner was indicted by the Maury County Grand Jury for first degree premeditated murder, first degree felony murder, and aggravated robbery based on his having shot and killed a store clerk, Veda White, during his March 20, 2006 armed robbery of a Columbia business, the "Spur Market." On January 25, 2008, the petitioner pled guilty in count two of the indictment to second degree murder in exchange for a sentence of forty-two years at 100 percent in the Department of Correction. In accordance with the plea agreement, counts one and three of the indictment were nolle prosequied.

On February 5, 2009, the petitioner filed a *pro se* petition for post-conviction relief in which he claimed, among other things, that he received ineffective assistance of counsel, which led to his entry of an unknowing and involuntary guilty plea. In an amended petition filed after the appointment of post-conviction counsel, the petitioner alleged that counsel failed to adequately meet with him, failed to adequately prepare for trial, and failed to explain that the deal offered by the State was a "hybrid plea" involving sentencing outside the petitioner's ordinary range. The petitioner asserted that, due to counsel's deficiencies in representation, at the time he entered his plea he lacked an understanding of, among other things, the extent and nature of the sentence involved in his plea, his options were he to proceed to trial, and the nature of the evidence against him, including the testimony his co-defendant intended to offer against him in exchange for the co-defendant's plea bargain agreement with the State.

At the evidentiary hearing, Sergeant Joey Gideon of the Columbia Police Department described his investigation of the crime and the evidence that led to the development of the petitioner and his co-defendant, Ricardo Walker, as suspects. This included the store's videotape showing that the shooter was wearing a camouflage jacket with fur on it; a statement by Deonte Brantley that the petitioner, who was dressed in a jacket like that worn by the shooter on the surveillance tape, called Brantley to come pick him and Walker up immediately after the shooting, telling him that they had just "hit a lick,"or committed a robbery; and the statement of Walker detailing the crime. Sergeant Gideon testified that both Brantley and Walker testified at the petitioner's juvenile transfer hearing. He said that the petitioner was present for the hearing and, thus, would have heard Walker's testimony about the petitioner's role in the crime.

The District Public Defender for the 22nd Judicial District, Claudia Jack,[1] testified that because the petitioner was facing th-e most serious punishment available for a juvenile, her office treated the case as seriously as they would have treated a death penalty case. Among other things, she contracted with a mitigation specialist; provided the petitioner with at least three complete copies of discovery; and gave the petitioner copies of the statutes describing the crimes and the range of punishment for each offense. Jack testified that she explained to the petitioner the seriousness of the case and the penalty he potentially faced. She said she was not personally involved in explaining the hybrid plea offer that the petitioner ultimately accepted, but her assistant public defenders would have been very

---

[1] It is the policy of the author of this opinion not to name counsel who have represented a petitioner in a post-conviction case when the claims have been determined to be without merit. We have deviated from that policy in this matter because of the confusion which might result if we referred, instead, to lawyers one through five. Additionally, we note that the claims against defense counsel have been determined to be baseless, both by the post-conviction court and this court.

careful to explain the plea to him. In addition, she made sure that the mitigation specialist "visited with him at length" before he accepted the offer to ensure that he understood his options, the plea deal, and its consequences. She later explained that none of the attorneys in her office would have used the term "hybrid plea" in talking with the petitioner about the deal but, instead, would have referred to it as pleading outside his range.

Jack further testified that just before the transfer hearing the State offered a plea deal of thirty-five years to whichever one of the defendants volunteered first to testify against the other. However, by the time the petitioner decided he wanted to accept that plea, it was too late because Walker had already taken the offer. Jack agreed that Walker testified at length at the transfer hearing about the crime and the petitioner's role in it. She said that Walker was ultimately given a twenty-year sentence at thirty-five percent for his testimony and that the petitioner was present in the courtroom when that fact was elicited at the transfer hearing.

Bob Stovall, an assistant public defender with over twenty years of experience in criminal defense, testified that he vigorously cross-examined Walker at the petitioner's lengthy juvenile transfer hearing in an attempt to make the State think twice about presenting him to the jury at trial. His hope, which was ultimately borne out, was that the State would consider making the petitioner some sort of plea offer.

Michelle Vandere, who had been licensed for almost twenty years by the time of the hearing, testified that she was co-counsel in the petitioner's case. She said her involvement began in juvenile court where she drafted three motions, including a motion for a mental evaluation. She also hired the mitigation expert and a forensic psychiatrist to perform an additional evaluation of the petitioner to see if they could obtain any useful information for trial or sentencing. During her meetings with the petitioner, she provided him with a complete duplicate copy of the discovery he had already been given, reviewed the evidence with him, and discussed the elements of the offenses and the possible punishments. She said that about a week before the trial was scheduled to begin the petitioner inquired if the thirty-five-year offer was still available. She, therefore, contacted the prosecutor, who responded with the settlement offer that the petitioner ultimately accepted.

Vandere testified that she met with the petitioner on three separate occasions to discuss the plea offer in great detail with him. On the first two occasions, the mitigation expert accompanied her, and on the third occasion, she was accompanied by Assistant Public Defender Robin Farber. In addition, the mitigation expert also met with the petitioner to discuss the plea deal on at least one occasion by herself. Vandere described the detailed and lengthy discussions they had with the petitioner about the nature of the offer and the fact that it involved a hybrid plea with a forty-two-year sentence at 100 percent, which was outside his normal range. She said that the trial court also went into great detail with the petitioner

-3-

during the plea colloquy to ensure that he understood the plea. Finally, she testified that the defense team continued to prepare for trial during the period in which the petitioner was deciding whether he wanted to accept the plea.

Shipp Weems, an assistant public defender who was licensed to practice law in 1976, testified that he became involved as co-counsel in the petitioner's case after it had been transferred to circuit court. He recalled that he met with the petitioner on at least three or four different occasions, during which times he reviewed with the petitioner the charges against him, the ranges of punishments, the State's evidence, and the discovery materials. He said he continued to work on the case during the week that preceded the trial date and would have been fully prepared to try the case had the petitioner decided to reject the plea deal. There was no alibi or any other affirmative defense and their defense strategy would have consisted of trying to create reasonable doubt by vigorous cross-examination of the State's witnesses, especially Walker. He was not present when the petitioner entered his guilty plea.

Ricardo Walker testified that he was offered a plea bargain in the case if he would agree to testify that the petitioner was the shooter. In his opinion, the prosecutor and his defense attorney did not care about the truth but, instead, were only interested in getting him to point the finger at the petitioner.

The petitioner, who said he had completed the tenth grade, testified that during the two years before he entered his guilty plea, he was visited twice by Ms. Jack, twice by Mr. Weems, and twice by Ms. Vandere. He could not recall any of those attorneys having discussed range of punishment or hybrid plea agreements with him and said that none of them ever reviewed with him the complete evidence in the case. The petitioner complained that all of his attorneys painted a negative picture of his chances at trial and said that he felt he never "had a fair chance from the start" and had no real choice other than to plead guilty. He acknowledged, however, that he understood at the time he pled guilty that he was pleading to second degree murder in exchange for a forty-two-year sentence at 100 percent, which was outside his ordinary range of fifteen to twenty-five years.

Attorney John Colley, who represented Ricardo Walker, testified that the deal Walker accepted from the State was based on his giving truthful testimony in the case, which included revealing the name of the shooter rather than referring to him as "the shooter," as Walker wanted to do. He said no one told Walker whom to identify as the shooter.

On September 21, 2010, the post-conviction court entered a detailed written order denying the petition in which it found, among other things, that the petitioner received effective assistance of counsel and that he was fully aware of the nature and consequences

of his plea, including that it involved sentencing outside his range.  This appeal followed.

## ANALYSIS

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States."  Tenn. Code Ann. § 40-30-103 (2006).  The petitioner bears the burden of proving factual allegations by clear and convincing evidence.  Id. § 40-30-110(f).  When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them.  See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006).  When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony.  Id.  However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness.  See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).  The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App.1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  The

prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The petitioner argues that trial counsel were deficient by their failure to adequately meet with him, to adequately prepare for trial, and to explain the nature of the hybrid plea to him. He further argues that these alleged deficiencies in counsel's performance resulted in his entering an unknowing and involuntary guilty plea because he felt he had no other choice than to accept the plea offer. However, the testimony of the public defenders who worked on the petitioner's case established that they met with the petitioner on multiple occasions, provided him with three complete copies of discovery, reviewed the evidence against him and the charges and sentencing ranges, prepared extensively for trial, and went to great lengths to explain the plea bargain agreement to him and to ensure that he understood its consequences. We also note that the petitioner acknowledged at the evidentiary hearing that he understood, at the time he entered his plea, that he was pleading guilty to second degree murder in exchange for a sentence of forty-two years at 100 percent, which was outside his

normal range. His understanding of the plea agreement is also revealed by his responses at the guilty plea hearing, where the trial court questioned him at length about whether he understood the nature and consequences of the plea, and he assured the trial court that he did. We conclude, therefore, that the evidence does not preponderate against the post-conviction court's findings that the petitioner received effective assistance of counsel and that his guilty plea was knowingly and voluntarily entered.

## CONCLUSION

Based on our review, we conclude that the petitioner has failed to meet his burden of showing that he received ineffective assistance of counsel or that his guilty plea was unknowing and involuntary. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE